IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JESSIE BERNABE,<br>TDCJ Wallace Unit No. 2144625,<br><br>    Plaintiff,<br><br>v.<br><br>D. ROSENBAUM and P.<br>INSIXIENGMAY,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br><br>Civil Action No. 4:18-cv-00580-O |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Corporal D. Rosenbaum's Motion for Summary Judgment and Brief in Support (ECF Nos. 42, 43), filed April 21, 2020; Defendant Insixiengmay's Motion for Summary Judgment and Brief in Support (ECF Nos. 44, 45), filed April 21, 2020; Joint Appendix in Support (ECF No. 46), filed April 21, 2020; and Plaintiff's Motion for an Order Compelling Discovery (ECF No. 54), filed June 29, 2020. Having considered the motions, responses,[1] replies, summary judgment evidence, record, and applicable law, the Court **GRANTS** Defendant Corporal D. Rosenbaum's Motion for Summary Judgment (ECF No. 42); **GRANTS**

---

[1] In response to the Officers' respective Motions for Summary Judgment, Plaintiff Jessie Bernabe filed the following documents: (1) Plaintiff's Statement of Disputed Factual Issues (as to Defendant P. Insixiengmay), ECF No. 62 ("Plaintiff's Disputed Facts No. 1"); (2) Declaration in Opposition to Defendant P. Insixiengmay's Motion for Summary Judgment, ECF No. 63 ("Plaintiff's Declaration No. 1"); (3) Plaintiff's Brief in Opposition to Defendant P. Insixiengmay's Motion for Summary Judgment, ECF No. 64 ("Plaintiff's Brief"); (4) Plaintiff's Statement of Disputed Factual Issues (as to Defendant D. Rosenbaum), ECF No. 65 ("Plaintiff's Disputed Facts No. 2"); (5) Declaration of Updated Information in Opposition to Both Defendants' Motions for Summary Judgment, ECF No. 66 ("Plaintiff's Declaration No. 2"); (6) Declaration in Opposition to Defendant D. Rosenbaum's Motion for Summary Judgment, ECF No. 67 ("Plaintiff's Declaration No. 3"); (7) Plaintiff's Brief in Opposition to Defendant Rosenbaum's Motion for Summary Judgment, ECF No. 68 ("Plaintiff's Brief No. 2"); and (8) Plaintiff's Exhibits in Support of his Opposition to Both Defendants D. Rosenbaum's and Defendant P. Insixiengmay's Motions for Summary Judgment, ECF No. 69 ("Plaintiff's Exhibits") (sometimes collectively, "Plaintiff's Response").

Defendant Insixiengmay's Motion for Summary Judgment (ECF No. 44); and **DENIES** Plaintiff's Motion for an Order Compelling Discovery (ECF No. 54).

## I.      BACKGROUND

 Plaintiff Jessie Bernabe ("Plaintiff" or "Bernabe"), incarcerated in the Wallace Unit of the Texas Department of Criminal Justice, Correctional Institutions Division and proceeding *pro se*, brings the instant action against City of Arlington Police Department's Corporal D. Rosenbaum ("Corporal Rosenbaum") and Officer Phouvilay Insixiengmay ("Officer Insixiengmay") (collectively, "Defendants") pursuant to 42 U.S.C. § 1983. Bernabe seeks to recover damages for injuries he claims to have sustained when Defendants employed the use of a taser prior to placing him under arrest on August 24, 2016. Defendants have moved for summary judgment based on qualified immunity. Bernabe has moved to compel additional discovery. The Court now sets forth the relevant facts which are undisputed, except as otherwise noted. In its recitation of the facts, the Court views all facts in the light most favorable to Bernabe, the nonmoving party, and draws all reasonable inferences in his favor.

### A.      Facts

Defendants Corporal Rosenbaum and Officer Insixiengmay are police officers with the City of Arlington Police Department. *See* Defs. Rosenbaum's and Insixiengmay's Joint App. Supp. Defs.' Motions  Summ. J. 1, 9, ECF No. 46 ("Defs.' Joint App."). On August 19, 2016, a black Hyundai Sonata was reported stolen in the City of Arlington. *Id.* at 147. On August 23, 2016, Officer Gonzales, another City of Arlington police officer not a party to this suit, observed Bernabe operating a stolen motor vehicle at night within the city limits of the City of Arlington. *Id.* at 156. Officer Gonzales made an initial attempt to conduct a traffic stop on the stolen vehicle, but Bernabe evaded Officer Gonzales's detention and drove away. *Id.*

On August 24, 2016, at approximately 12:15 A.M., Corporal Rosenbaum was on patrol in the Eastern District of the City of Arlington on the midnight shift. *Id.* at 2. Before going on his shift, Officer Gonzalez had briefed him about a suspect that led police on a chase in a stolen motor vehicle on the night of August 23, 2016. *Id.* Officer Gonzalez provided Corporal Rosenbaum a description of the stolen vehicle and the driver. *Id.*

During his patrol, Corporal Rosenbaum was able to locate the stolen vehicle parked outside of a home in the 700 block of Glynn Oaks Drive. *Id.* at 2, 156. The home "had prior reports of criminal activity associated with it including illegal drug charges, property crimes and stolen vehicles." *Id.* at 2. He parked his patrol car nearby and surveilled the house and stolen vehicle. *Id.* at 2, 156. After two hours of surveillance, he noticed the vehicle's lights turn on. *Id.* at 2. The stolen vehicle then began to drive away. *Id.* at 2. Corporal Rosenbaum pulled in behind the stolen vehicle and, almost immediately, the vehicle turned into a driveway of a nearby residence at 2008 Meadow Lane. *Id.* at 2, 156. Because Meadow Lane was just around the corner from Glynn Oaks Drive, and because the vehicle turned into the driveway seemingly in response to Corporal Rosenbaum's patrol car approaching it, Corporal Rosenbaum suspected that the vehicle's occupants did not live at the residence and were simply attempting to avoid detection. *Id.* at 3, 156.

Corporal Rosenbaum activated the patrol light bar on the top of his marked police vehicle and used his vehicle mounted spotlight to illuminate a male suspect, later identified as Bernabe, who had exited the stolen vehicle from the driver's side door. *Id.* at 3, 156. An unidentified female also exited the passenger door of the stolen vehicle. *Id.* at 3. Bernabe generally matched the description of the suspect that Officer Gonzalez had provided to Corporal Rosenbaum before he started his shift and was approaching the Meadow Lane residence. *Id.* at 3.

3

At this point, Corporal Rosenbaum had not had the opportunity to search either individual for contraband or weapons. *Id.* He gave multiple loud commands, identifying himself as a police officer and directing both Bernabe and the unidentified female to his location. *Id.* Walking toward the front door of the residence, Bernabe turned and began walking back toward Corporal Rosenbaum, as if he intended to comply with Corporal Rosenbaum's orders. *Id.* However, Bernabe suddenly turned and began running away from Corporal Rosenbaum down Meadow Lane. *Id.* At this point, no other officers were present. *Id.* at 3.

Corporal Rosenbaum began to chase Bernabe on foot down the street and through a yard of one of the residences on Meadow Lane. *Id.* at 3, 157. It was after midnight, and the area was not well lit. *Id.* Corporal Rosenbaum radioed dispatch to alert them that he was in foot pursuit of Bernabe. *Id.* At that time, the street upon which they were running was under construction, so much of the road surface had been removed, leaving the terrain uneven, and consisting mainly of loose gravel. *Id.* at 3-4. As Bernabe ran out of the yard, back into the roadway construction area, he fell onto the gravel, allowing Corporal Rosenbaum to close ground on him. *Id.* at 4. Before Corporal Rosenbaum could apprehend Bernabe, he recovered and resumed running. *Id.* At this point, Corporal Rosenbaum also fell because of the uneven surface and the loose gravel and sustained multiple abrasions as he fell behind Bernabe. *Id.* Despite Corporal Rosenbaum's orders to stop and go to the ground, Bernabe continued to run down Meadow Lane where the street converged into the St. Mark's Anglican Church parking lot. *Id.* Corporal Rosenbaum estimates that at this point, the foot chase had covered 150 to 200 yards. *Id.* Bernabe drew further away as Corporal Rosenbaum began to fatigue. *Id.*

Officer Insixiengmay then approached from the east and intercepted the foot chase. *Id.* at 4, 11-12, 157, 159. Bernabe was only slowed down when he went through a hole in a chain link

fence between the church and the Import Foods business located next door in the 700 block of E. Pioneer Parkway. *Id.* at 4, 12, 157, 159. After Bernabe made his way through the hole in the fence, Corporal Rosenbaum made his way through the hole in the fence and was able to catch up and come within a few feet of Bernabe. *Id.* at 4-5, 12, 157, 159. Both Corporal Rosenbaum and Officer Insixiengmay gave loud verbal commands to Bernabe to stop and to get on the ground, but he failed to comply. *Id.* at 4-5, 12, 157, 159. Bernabe heard an officer "shout to stop running" and saw police car squad lights and heard sirens. Pl.'s Declaration No. 1 at ¶ 10, ECF No. 63.

"Bernabe appeared tired and began walking away from officers[,] still refusing to obey the officers' lawful commands." Pl.'s Exhibits, Ex. A at 1-2 (Arlington Police Department Informational Memo), ECF No. 69. "Bernabe ignored the commands of these officers with his back turned to them and walk[ed] across the parking lot of [Import Foods]." *Id.* at 2. "Officer Rosenbaum and Officer Insixiengmay both had their ECD Tasers at the ready and when Bernabe refused the final time to obey their commands to stop, these officers deployed their [t]asers at the back side of Bernabe's upper torso with an effective result in stopping Bernabe from continuing to evade the officers." *Id.* Corporal Rosenbaum fired his taser approximately one second before Officer Insixiengmay fired his taser. Defs.' Joint. App. 17-18, ECF No. 46.[2]

---

[2] In connection with their respective motions for summary judgment, and in response to Plaintiff's Rule 7(a) reply belatedly asserting that the Taser Reports show a gap of one (1) minute and eighteen (18) seconds between taser deployments, Defendants submit the Affidavit of Corporal Ronny McCoy, the Inservice Coordinator and Primary Taser Instructor at the City of Arlington Police Department. *See* Defs.' Joint App. 15-20, McCoy Aff., ECF No. 46. Corporal McCoy attaches to his Affidavit "true and correct copies" of the Taser Reports related to the taser usage by Defendants on August 24, 2016. *Id.* at 16, McCoy Aff. ¶ 4. In his Affidavit, Corporal McCoy attests that the Taser Reports "do not evidence a time gap of that size between the two officers' use of their Tasers. In fact, the reports reflect that Officer Insixiengmay and Corporal Rosenbaum discharged their respective Tasers with a second of one another." *Id.* at 16-17, McCoy Aff. ¶ 5. The Taser Report shows Officer Insixiengmey's Taser (Model X26 Taser Serial Number X00-57760) was deployed for five seconds beginning at 2:31:21 a.m. (taking into account the time sync described by Corporal McCoy). *Id.* at 17, McCoy Aff. ¶ 7 and Ex. A thereto. The Taser Report shows Corporal Rosenbaum's Taser (Model X26 Taser Serial Number X00-57752) was deployed for five seconds beginning at 2:31:20 a.m. (taking into account the time sync described by Corporal McCoy). *Id.* at 17, McCoy Aff. ¶ 8 and Ex. B thereto. Plaintiff does not challenge Corporal McCoy's Affidavit in his response

Corporal Rosenbaum stated that, after being tased, Bernabe "achieved neuro muscular incapacitation and fell to the pavement in th[e] parking lot." Pl.'s Exhibits, Ex. A at 2. The officers handcuffed Bernabe and, noticing bleeding from Bernabe's mouth and eye brow area of his face, immediately summoned EMS to the location to tend to Bernabe. *Id.* "Both officers concluded that Bernabe had fallen to the pavement striking his face after being [t]ased." *Id.* One of the probes was tangled in Bernabe's hair and the other probes hit his torso. *Id.* After being taken to the hospital and receiving treatment, Bernabe was transported and released to the Arlington City Jail staff. *Id.*

Bernabe was arrested for improper use of a motor vehicle, for evading arrest, and for outstanding warrants. Defs.' Joint App. 13, 144-46, 148-55, ECF No. 46. Ultimately, Bernabe pled guilty to evading arrest or detention in violation of Texas Penal Code 38.04(b)(1). Pl.'s Ans. Court's Questionnaire 1, ECF No. 11. He is currently serving his sentence in connection with that conviction and others. *See id.*

### B.     Procedural History

*Pro se* Plaintiff Bernabe filed his Original Complaint on July 16, 2018, against the City of Arlington and Defendants in their respective individual and official capacities pursuant to 42 U.S.C. § 1983 for alleged Fourth Amendment violations. Compl., ECF No. 1. After granting Bernabe's application to proceed *in forma pauperis*, the Court provided him with a questionnaire and a supplemental questionnaire, both of which he completed and returned to the Court. Pl.'s Resp. to Questionnaire, ECF No. 11; Pl.'s Resp. to Supp. Questionnaire, ECF No. 16. On September 18, 2019, with leave of Court, Bernabe filed an Amended Complaint. *See* Am. Compl.,

---

or the data upon which it relies. Accordingly, the Court finds no support for Bernabe's belated assertion in his Rule 7(a) reply of a gap of one (1) minute and eighteen (18) seconds between taser deployments. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citations and emphasis omitted) ("We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.").

ECF No. 18. On October 1, 2019, the Court issued a Partial Final Judgment pursuant to Federal Rule of Civil Procedure 54(b) dismissing Bernabe's claims against the City of Arlington and Defendants in their respective official capacities after it concluded he had failed to state a claim. *See* Order, ECF No. 19; Partial Final J., ECF No. 20.

Defendants, in their respective individual capacities, were served with summons and appeared in this case on December 9, 2019. Each Defendant filed an answer, asserting his defense of qualified immunity. Def. P. Insixiengmay's Ans., ECF No. 26; Def. D. Rosenbaum's Ans., ECF No. 28.

Following discovery, on April 21, 2020, Corporal Rosenbaum and Officer Insixiengmay filed separate motions for summary judgment, each asserting his entitlement to qualified immunity. On June 29, 2020, Bernabe filed a Motion to Compel Discovery. The motions are now ripe for consideration by the Court.

## II.    LEGAL STANDARD

The Court may grant summary judgment where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

"[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the court of the basis of its motion and demonstrate from the record that no genuine dispute

as to any material fact exists. *See Celotex*, 477 U.S. at 323. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

When reviewing the evidence on a motion for summary judgment, courts must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. If there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion. *Id.* at 250.

## III.    ANALYSIS

Corporal Rosenbaum and Officer Insixiengmay each filed a motion for summary judgment with respect to Bernabe's excessive force claim, and each asserted his entitlement to qualified immunity. For the following reasons, the Court concludes that Bernabe raises no genuine dispute of material fact to support his claim that either Defendant used excessive force in violation of Bernabe's constitutionally protected rights under the Fourth Amendment. Alternatively, the Court concludes that Bernabe has failed to establish that the right at issue was "clearly established" at the time of either Defendant's alleged misconduct so that a reasonable official under the circumstances presented would have understood that his conduct violated that right. Corporal Rosenbaum and Officer Insixiengmay, therefore, are entitled to summary judgment based on qualified immunity.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant moves for summary judgment on the basis of qualified immunity, the court must decide: (1) whether the facts, taken in the light most favorable to the plaintiff, show the officer's conduct violated a constitutional right; and (2) whether that right was "clearly established" at the time of the defendant's alleged misconduct so that a reasonable official in the defendant's situation would have understood that his conduct violated that right. *See Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014).

A court has discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan*, 572 U.S. at 656. Rather, courts must view the facts and draw reasonable inferences in favor of the nonmovant. *Id.* at 657; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007) ("In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts."). "If the plaintiff fails at either step, the federal court can grant qualified immunity by addressing either step or both of them." *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019).

**A. Was There a Violation of a Constitutional Right?**

Bernabe asserts that Defendants used excessive force during the events that led to his arrest. Defendants argue they are entitled to summary judgment based on qualified immunity because the force they used to apprehend Bernabe was not excessive, as it was objectively reasonable, in the

exigency of the moment, for them to believe that deployment of their tasers did not violate Bernabe's rights under the Fourth Amendment.

Starting with the first prong of the qualified immunity analysis, the Court considers, viewing the facts in the light most favorable to Bernabe, whether Corporal Rosenbaum or Officer Insixiengmay's actions during Bernabe's arrest violated his Fourth Amendment rights. "When a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures." *Graham v. Connor*, 490 U.S. 386, 394 (1989). "To establish a claim of excessive force under the Fourth Amendment, plaintiffs must demonstrate: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017) (internal quotations and citations omitted). A plaintiff must show that the use of force was "clearly excessive to the need and was objectively unreasonable[.]" *Hill v. Carroll Cnty*, 587 F.3d 230, 234 (5th Cir. 2009). A determination of whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the amount of force used against the need for force. *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008). As stated by the Supreme Court, the test used to determine whether a use of force was reasonable under the Fourth Amendment "is not capable of precise definition or mechanical application." *Graham*, 490 U.S. at 396 (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). Rather, "its proper application requires careful attention to the facts and circumstances of each particular case, including" (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20

vision of hindsight." *Id.* Thus, the overarching question is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Id.* at 397.

For the reasons that follow, viewing the situation from the perspective of an officer at the scene, as the Court must, the Court concludes that Corporal Rosenbaum's and Officer Insixiengmay's use of the taser to effectuate Bernabe's arrest was reasonably proportionate to the difficult and uncertain situation that each faced. Accordingly, each is entitled to summary judgment based on qualified immunity.

The Court examines Corporal Rosenbaum's and Officer Insixiengmay's respective actions separately, notwithstanding that they employed their tasers almost simultaneously. *See Marie Ramirez v. Guadarrama*, No. 20-10055, __ F. App'x __, 2021 WL 435099, at *4 n.4 (5th Cir. Feb. 8, 2021) ("Our precedent makes clear that we examine each individual's entitlement to qualified immunity separately.") (internal quotations and citations omitted) (collecting cases).

### 1.    *Corporal Rosenbaum*

At the outset, Corporal Rosenbaum contends that he is entitled to summary judgment based on qualified immunity because Bernabe fails to raise a genuine dispute of material fact that he suffered an injury as a result of the tasing. The Court rejects this argument and concludes that Bernabe has provided sufficient evidence to raise a genuine dispute of material fact that his injuries resulted from the tasing. *See* Pl.'s Exhibits, Ex. A at 2 (Arlington Police Department Informational Memo), ECF No. 69.

Corporal Rosenbaum next argues he is entitled to summary judgment based on qualified immunity because his actions in discharging the taser were not excessive or objectively unreasonable under the circumstances presented. For the reasons that follow, the Court agrees.

The following facts are undisputed. Bernabe left a residence associated with criminal activity and drove off in a stolen vehicle. Defs.' Joint App. 2, ECF No. 46. When Corporal Rosenbaum first encountered Bernabe, he ordered him to come to where he was standing. *Id.* at 3. Bernabe pretended to be compliant at first and then ran off. *Id.* Corporal Rosenbaum pursued Bernabe, a felony suspect, without any prior opportunity to search his person. *Id.* He pursued Bernabe on foot for approximately 200 yards through private residential yards, a church parking lot, a chain link fence, and toward a commercial strip center parking lot. *Id.* at 3-4, 157. Bernabe repeatedly refused to comply with multiple orders during the chase. *Id.* at 4-5, 12, 157, 159. As the foot pursuit continued, Corporal Rosenbaum was losing ground. *Id.* As they reached the fence, Officer Insixiengmay approached from the east and aided in the pursuit. *Id.* at 4, 11-12, 157, 159. Corporal Rosenbaum ordered Bernabe to stop running and get on the ground and warned him that, if he did not obey, he would be tased. *Id.* at 4-5, 12, 157, 159. Once again, Bernabe failed to obey the warnings. *Id.*

Bernabe, in response to Corporal Rosenbaum's motion, asserts that certain disputes of fact preclude summary judgment. First, he contends that after passing through the chain link fence, he was walking away as opposed to running, thereby "mak[ing] it easier to capture and not harder and so he wasn't actively attempting to evade." Pl.'s Br. Opp. 15, ECF No. 68. Under Fifth Circuit law, Bernabe's argument that he was walking and preparing to surrender is of no moment. Whatever Bernabe was intending to do is not sufficient to defeat qualified immunity because his subjective intent or motivation is irrelevant. *See Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012). Further, by Bernabe's own admission, he was still on his feet and moving away from the officers at the time he was tased. Pl.'s Br. Opp. 15, ECF No. 68. Finally, it is undisputed that initially, Bernabe began walking toward Corporal Rosenbaum, portraying compliance, and

then began running in an attempt to escape. Defs.' Joint App. 3-4, ECF No. 46. Thus, Corporal Rosenbaum's prior interaction with Bernabe gave him a reasonable basis to believe that Bernabe, who had slowed to a walk after passing through the chain link fence, would resume running and escape the effective range of the taser.

Second, Bernabe complains that one of the taser prongs hit him in the back of the head. There is no dispute that a taser probe was removed from Bernabe's tangled long hair. The Fifth Circuit has not found that a constitutional violation occurs because a prong contacts a fleeing felon in the head. *Batiste v. Theriot*, 458 F. App'x 351, 355 (5th Cir. 2012). Further, although Bernabe speculates the officers aimed at his head, there is no evidence to support this. Further, errant aim, at most, might be considered negligent conduct which does not give rise to an excessive force claim. *See Watson v. Bryant*, 532 F. App'x 453, 457 (5th Cir. 2013).

Third, Bernabe contends that other officers were in the vicinity raising a fact issue as to whether tasing him was reasonable force. Bernabe presents no evidence that other officers were present at the scene when he was tased. His reference to Corporal Nguyen's report is misplaced. Corporal Nguyen's report reflects he drove to the area where the foot chase began, observed a female suspect, and placed her under arrest. Pl.'s Exhibits, Ex. E at 1-2 (Report of Corporal Nguyen), ECF No. 69. His report does not indicate he was present when Bernabe was tased. *See id.* Corporal Rosenbaum and Officer Insixiengmay have both attested that they were the only officers present when Bernabe was tased. Defs.' Joint App. 6, 12. In any event, the presence of other officers would not automatically transform Corporal Rosenbaum's use of force into

excessive force, as Bernabe was still ignoring commands and was moving away from Corporal Rosenbaum as he attempted to apprehend Bernabe.[3]

In short, at the moment Corporal Rosenbaum discharged his Taser, he was confronted with a situation in which Bernabe: (1) was continuing to move away from him and had the ability to start running again; (2) had continually refused to follow the orders to stop and get to the ground; (3) was a felony suspect who was thought to have had led police on a dangerous high speed chase the night before per Officer Gonzalez's report; (4) was headed in the direction of a commercial strip mall; and (5) had come from a residence with an associated criminal and drug history. In addition, Corporal Rosenbaum had been unable to search Bernabe and had no way of knowing whether he was armed or intoxicated.

Under these circumstances, the Court concludes, as a matter of law, that Corporal Rosenbaum's use of the taser was a reasonable application of force, during a chase of a fleeing suspect who repeatedly refused to follow multiple warnings and orders to stop and get on the ground. *See Poole*, 691 F.3d at 629 (summary judgment granted to officers who responded with "measured and ascending" actions, including taser use, which corresponded to the plaintiff's escalating verbal and physical resistance in a "tense, uncertain, and rapidly evolving" situation); *Batiste*, 458 F. App'x at 355-56 (reversing denial of summary judgment on finding that it is reasonable for officers to chase and taser a fleeing suspect with a felony arrest warrant); *Hale v. City of Biloxi*, No. 1:16-cv-113-LG-RHW, 2017 WL 3087279, at *5 (S.D. Miss. July 20, 2017) (officer's use of taser upon person who refused to follow commands held not objectively unreasonable), *aff'd*, 731 F. App'x 259 (5th Cir. 2018); *Brewer v. Texas*, No. 3-10-cv-1721-N-BD,

---

[3] To the extent Bernabe contends that discovery disputes have prevented him from fully responding to the pending motions, the Court rejects Bernabe's contention that more discovery is needed. This matter and Bernabe's Motion to Compel Discovery are discussed fully below. *See infra* Sec. IV.

2011 WL 3101789, at *3 (N.D. Tex. June 7, 2011), *report and recommendation adopted*, No. 3-10-cv-1721-N, 2011 WL 3047647 (N.D. Tex. July 22, 2011) (granting summary judgment in officers' favor because use of taser device was not an unreasonable attempt to subdue plaintiff who repeatedly ignored instructions by police to show his hands).

Accordingly, Corporal Rosenbaum is entitled to summary judgment based on qualified immunity because Bernabe has failed to raise a genuine dispute of material fact to support his claim that Corporal Rosenbaum's conduct violated a constitutional right.

### 2.   *Officer Insixiengmay*

The Court now addresses the first prong of the qualified immunity analysis with respect to Officer Insixiengmay's conduct. Specifically, the Court considers, viewing the facts in the light most favorable to Bernabe, whether Officer Insixiengmay's actions during Bernabe's arrest violated Bernabe's Fourth Amendment rights.[4] For the following reasons, the Court determines that the decisions and actions of Officer Insixiengmay in discharging his taser were not excessive to the need or objectively unreasonable under the circumstances presented to him.

The following facts are undisputed. During the early morning hours of August 24, 2016, Officer Insixiengmay was on duty and, at approximately 12:29 A.M., heard over his police radio that Corporal Rosenbaum was following a stolen vehicle as it was moving. Defs.' Joint App. 10-11, ECF No. 46. Aware that Corporal Rosenbaum was conducting surveillance of the stolen vehicle, Officer Insixiengmay continued to monitor his police radio and heard Corporal Rosenbaum say that he was in foot pursuit of the driver of the stolen vehicle. *Id.* at 11. Because Officer Insixiengmay was familiar with the neighborhood, he had a good idea of where the suspect was running and approached from the east. *Id.* at 4, 11-12, 157, 159. Officer Insixiengmay was

---

[4] Officer Insixiengmay does not dispute that Bernabe was injured as a result of the tasing.

approximately thirty to forty yards away when he observed an unknown suspect running southbound across the church's recreational area from a dead end on Meadow Lane, and he believed the person running to be the suspect, later identified as Bernabe, fleeing from Corporal Rosenbaum. *Id.* at 11. He observed Bernabe briefly glance at him in his patrol car and continue running southbound. *Id.* He parked his vehicle, jumped out, and gave chase on foot. *Id.* In pursuit, Officer Insixiengmay verbally shouted and commanded Bernabe to stop and get to the ground. *Id.* at 11-12. Bernabe continued to flee and failed to comply with warnings. *Id.* at 12. Bernabe only slowed down when he went through a hole in the chain link fence. *Id.* Officer Insixiengmay was not able to deploy his taser beforehand because he had not unholstered it. *Id.* Notwithstanding the warnings, Bernabe never stopped moving away from Officer Insixiengmay and never appeared to raise his hands or to attempt compliance. *Id.* At this point, Corporal Rosenbaum made it through the fence opening and joined Officer Insixiengmay. *Id.* After further warnings, Officer Insixiengmay aimed his taser at Bernabe's torso and discharged his taser to prevent Bernabe's escape. *Id.* Officer Insixiengmay believed the taser made contact because he observed Bernabe lock up and fall face first on the parking lot surface. *Id.* Officer Insixiengmay heard the sound of another taser being shot and assumed Corporal Rosenbaum had discharged his taser at about the same time. *Id.* Thereafter, Officer Insixiengmay handcuffed Bernabe and placed him under arrest. *Id.*[5]

In short, at the moment Officer Insixiengmay discharged his taser, he was confronted with a situation in which Bernabe: (1) was continuing to move away from him and had the ability to

---

[5] Bernabe makes the same arguments in an attempt to raise a genuine dispute of material fact as he did with respect to Corporal Rosenbaum, namely that he was slowed to a walk and preparing to surrender, that a taser probe hit him in the head, and that other officers were present. For the reasons previously stated, the Court similarly concludes that Bernabe has failed to provide any facts to support his speculation, or that these facts, assuming they are true, raise a genuine dispute of material fact.

start running again; (2) had continually refused to follow the orders to stop and get to the ground; (3) was a felony suspect who was thought to have had led police on a dangerous high speed chase the night before; and (4) was headed in the direction of a commercial strip mall. In addition, Officer Insixiengmay had been unable to search Bernabe and had no way of knowing whether he was armed or high on drugs.

Under these circumstances, the Court concludes that Officer Insixiengmay's use of the taser was a reasonable application of force, during a chase of a fleeing suspect who repeatedly refused to follow multiple warnings and orders to stop and get on the ground. *See Poole*, 691 F.3d at 629; *Batiste*, 458 F. App'x at 355-356; *Brewer*, 2011 WL 3101789, at *3.

Further, in this situation, Officer Insixiengmay, like Corporal Rosenbaum, was "forced to make [a] split-second judgment [ ]—in circumstances that [we]re tense, uncertain, and rapidly evolving—about the amount of force that [wa]s necessary." *Graham*, 490 U.S. at 396-97. Attempts to tackle Bernabe and thereafter physically handcuff Bernabe may well have, or would likely have, escalated a tense and difficult situation into a serious physical struggle in which the arresting officers could be injured by Bernabe or Bernabe more seriously injured. Hence, viewing the situation from the standpoint of an objectively reasonable officer, the single, five-second taser deployment by Officer Insixiengmay was reasonably proportionate to the need to stop Bernabe from continuing to flee and to subdue him, thereby reducing the risk of further physical confrontation or danger to the officer or members of the public.

Because no reasonable jury could conclude otherwise, Bernabe's claim of excessive force must be dismissed to the extent it is predicated upon Officer Insixiengmay's application of the taser. In addition, Officer Insixiengmay is entitled to summary judgment based on qualified

immunity because Bernabe has failed to raise a genuine dispute of material fact to support his claim that Officer Insixiengmay's conduct violated a constitutional right.

### B. Was the Constitutional Right Clearly Established at the Time of the Violation?

The Court has held directly above that Corporal Rosenbaum's and Officer Insixiengmay's conduct did not violated Bernabe's Fourth Amendment rights, and they are, therefore, entitled to summary judgment based on qualified immunity. Even if that were not the case, the Court, in the alternative, determines that Corporal Rosenbaum and Officer Insixiengmay would still be entitled to summary judgment based on qualified immunity.

"An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was 'clearly established' at the time of the challenged conduct." *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014) (citation and internal quotation marks omitted). "And a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.* at 778-79 (citation omitted). If public officials or officers of "reasonable competence could disagree [on whether the conduct is legal], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (citing *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). Conversely, an officer's conduct is not protected by qualified immunity if, in light of clearly established pre-existing law, it was apparent the conduct, when undertaken, would be a violation of the right at issue. *See Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Jones v. City of Jackson*, 203 F.3d 875, 879 (5th Cir. 2000). In analyzing qualified immunity claims, the Supreme Court has "repeatedly told courts . . . to not define clearly established law at a high level of generality." *Mullenix*, 577 U.S. at 12 (citation omitted). Courts must consider "whether the violative nature of

particular conduct is clearly established" and must undertake this inquiry "in light of the specific context of the case, not as a broad general proposition." *Id.* (citations and internal quotations marks omitted).

Bernabe has failed to meet his burden of showing that Defendants' conduct violated clearly established law. Bernabe suggests this standard is met because at the time of the incident, it was clearly established that tasing someone who is not actively resisting arrest and unarmed violates the Fourth Amendment. *See, e.g., Tennessee v. Garner*, 471 U.S. 1, 10–11, (1985). As previously stated, however, the Court does not define "clearly established law" at "a high level of generality." *Plumhoff*, 572 U.S. at 779 (citation omitted). Instead, Bernabe must point to case law clearly establishing Defendants acted unreasonably based on facts similar to the particular circumstances they faced—the use of a taser where a person suspected of a felony leads officers on an extended foot chase and ignores repeated warnings to stop and get to the ground. *See also Kisela v. Hughes*, ——— U.S. ———, 138 S. Ct. 1148, 1153 (2018) (per curiam) ("Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue.") (quoting *Mullenix*, 577 U.S. at 13).

To support his argument that using a taser has been clearly established to be unconstitutional and amounts to excessive force, Bernabe cites cases from outside this circuit, which the Court declines to consider in light of ample Fifth Circuit case law. He also cites to general excessive force Fifth Circuit cases that are inapposite and do not involve tasers. These cases do not satisfy the requirement to point to clearly established law that would have guided Defendants' decision to discharge his taser in this case. *See Williams v. Bramer*, 180 F.3d 699 (5th Cir. 1999) (officer alleged to have choked the plaintiff twice during arrest); *Bush v. Strain*, 513

F.3d 492 (5th Cir. 2008) (officer alleged to have slammed the plaintiff's head into rear window of car during arrest). As to those Fifth Circuit cases Bernabe cites that do involve tasers, the cases involve consideration of facts that are so dissimilar from the facts of this case so as to also not constitute clearly established law guiding Defendants in the circumstances here. *See Anderson v. McCaleb*, 480 F. App'x 768 (5th Cir. 2012) (one officer shot plaintiff with taser, then after plaintiff fell to the ground, officer continued shocking the plaintiff five or six times, then slammed plaintiff to the ground after he was handcuffed, and second officer got on top of plaintiff and hit him with a closed fist); *Autin v. City of Baytown*, 174 F. App'x 183 (5th Cir. 2005) (officer caused taser dart to penetrate plaintiff's skin and then officer repeatedly contact-tased plaintiff while physically forcing her to the ground, causing her to hit her head on a pole and suffer a severe laceration, where plaintiff was not a fleeing suspect or resisting arrest).

As of August 24, 2016—the date of the events at issue in that case—tasing an individual who was evading arrest had not been clearly established to be unlawful in the Fifth Circuit. *See Zimmerman v. Cutler*, 657 F. App'x 340, 346 (5th Cir. 2016) ("[Plaintiff] points to no case, and we have uncovered none, making clear to a reasonable officer in 2012 that the on-time use of a [t]aser on a person reasonably suspected of a misdemeanor amounts to excessive force."). Bernabe attempts to distinguish *Zimmerman* because it involved only one officer deploying a taser. According to Bernabe, the Court should consider Defendants' conduct together and employ a joint tortfeasor-type analysis in assessing whether there was a violation of clearly established law. As previously noted, in the Fifth Circuit, courts must consider each officer's conduct separately. *See Marie Ramirez*, 2021 WL 435099, at *4 n.4 ("Our precedent makes clear that we examine each individual's entitlement to qualified immunity separately.") (collecting cases). Accordingly, that Officer Insixiengmay deployed his taser approximately one second after Corporal Rosenbaum

does render the holding in *Zimmerman* inapposite. Each officer's conduct must be considered separately.

In sum, even if Corporal Rosenbaum's and Officer Insixiengmay's respective conduct was excessive and violated Bernabe's Fourth Amendment rights, each would still be entitled to qualified immunity. The Court, accordingly, will grant summary judgment based on qualified immunity in Defendants' favor on the § 1983 claims against them on this basis.

## IV.   DISCOVERY AND PLAINTIFF'S MOTION TO COMPEL

### A.   Summary of Discovery Conducted

As previously stated, on April 21, 2020, each Defendant filed a motion for summary judgment asserting his entitlement to qualified immunity. Bernabe received several extensions of time to respond to the motions. Meanwhile, on December 26, 2019, Bernabe sent, via United States Mail, document requests directed to Defendants. *See* Ex. A in Support of Pl.'s Mot. Compel at 1-7 (Plaintiff's Request). Defendants served their responses to the document requests on January 28, 2020. *See* Ex. C in Support of Pl.'s Mot. Compel at 17-57 (Defendants' Responses), ECF No. 57. In their responses, Defendants indicated that they would produce responsive documents, via first class mail, no later than February 7, 2020. *Id.* On February 7, 2020, Defendants sent the following documents to Bernabe: (1) Police reports pertaining to the incident, including all narratives; (2) Taser reports, pertaining to the incident, for both officers; (3) the CAD call activity report pertaining to the incident; (4) the Use of Force report, pertaining to the incident; (5) communications between Plaintiff and the City and an internal memo evaluating Plaintiff's complaint; (6); medical invoices sent to the City by Plaintiff; (7) all photographs of the Plaintiff and the Defendants related to the incident; and (8) a flash drive containing a second electronic

copy of all documents and two video files from Officer Rosenbaum's vehicle pertaining to the incident, which were the only video recordings related to the incident.

Defendants objected to producing two sets of documents: (1) the City's policies and practices, which they asserted were not relevant to the resolution of their qualified immunity defense; and (2) general, and unspecified, taser literature. Defendants also explained to  Bernabe that neither Defendants nor the City of Arlington possessed certain documents, such as the paramedic medical records or reports, and other evidence which did not exist—namely body camera recordings because the officers were not equipped with them. *See* Ex. C in Support of Pl.'s Mot. Compel at 17-57 (Defendants' Responses), ECF No. 57. At Bernabe's request because he indicated that he needed multiple copies of certain documents, Defendants later re-sent various documents saved to a CD, rather than a flash drive, because Bernabe indicated that the CD was a prison requirement.

On June 29, 2020, Bernabe filed a motion to compel discovery responses and afford further discovery and brief in support. *See* Pl.'s Mot. Compel Discovery & Br., ECF Nos. 54, 55. Bernabe maintains: (i) Defendants' objections were untimely; (ii) Defendants failed to produce City policies and general taser literature; and (iii) Defendants did not produce certain other documents based on their contention that these documents either did not exist or were possessed by private medical providers. Bernabe seeks $27,475.32 for "reasonable expenses" associated with obtaining an order requiring Defendants to produce the aforementioned documents. Pl.'s Mot. Compel Discovery 2, ECF No. 54.

      **B.**    **Applicable Legal Standards**

           *1.*    ***Rules 26 and 37 of the Federal Rules of Civil Procedure***

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, discoverable matters must be both relevant and proportional to the needs of the case. *See Samsung Elecs. Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). A party who opposes a discovery request must, in response to a Rule 37(a) motion to compel, urge its supported objection to the request, and, if it does not, it waives the objection. *See Orchestratehr, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 507 (N.D. Tex. 2016). A party resisting discovery must specifically show how each discovery request is not relevant or objectionable. *See McLeod, Alexander, Powel, & Apffell, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). A party resisting discovery must also show how the requested discovery is overly broad, burdensome, or oppressive by submitting affidavits or offering other evidence showing the nature of the burden alleged. *See Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005).

### 2.   *Qualified Immunity and Discovery*

"One of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (citing *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986)); *cf. Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994 (5th Cir. 1995) ("[A] party asserting the defense of qualified immunity is not immune from all discovery, only that which is avoidable or overly broad." (citation and internal quotation marks omitted)). "Consequently, [the Fifth Circuit] has established a careful procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense." *Backe*, 691 F.3d at 648. A district court must first find "that the plaintiffs pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Wicks*, 41 F.3d at 994; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (directing that a plaintiff must "state a claim to relief that is plausible

23

on its face"—excluding statements that are "no more than conclusions" which are "not entitled to the assumption of truth") (internal quotation marks omitted). "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe*, 691 F.3d at 648.

"After the district court finds a plaintiff has so pleaded, if the court remains 'unable to rule on the immunity defense without further clarification of the facts,' it may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'" *Id.* (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 507-08 (5th Cir. 1987)) (emphasis added). "Courts have an obligation . . . to carefully scrutinize a plaintiff's claim before subjecting public officials to the burdens of broad-reaching discovery." *Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir. 1986).

When an individual defendant has asserted a qualified immunity defense, the Court may, under certain circumstances, permit limited discovery that is narrowly tailored to uncover facts that the Court needs to rule on the qualified immunity defense. *See Luna v. Valdez*, No. 3:15-cv-3520-D-BN, 2017 WL 4222695, at *1-2 (N.D. Tex. Sept. 21, 2017) (Fitzwater, J.) (citing *Wicks*, 41 F.3d at 994). On a proper request, the Court may authorize a plaintiff to conduct limited discovery to respond to the qualified immunity issues raised in a defendant's motion for summary judgment. *Id.* at *2 (citing *Backe*, 691 F.3d at 648); *Hinojosa v. Livingston*, 807 F.3d 657, 670 (5th Cir. 2015) ("[A] district court may elect the defer-and-discover approach 'when the defendant's immunity claim turns at least partially on a factual question' that must be answered before a ruling can issue.") (quoting *Lion Boulos*, 834 F.2d at 507)).

### C.       Discussion

#### 1.       *Timeliness of Defendants' Responses and Objections*

Bernabe first argues that Defendants' responses and objections to his discovery requests were untimely and, therefore, Defendants waived any objections. Pl.'s Br. Supp. Mot. Compel 2-3, ECF No. 55. In support, he notes that he served his discovery requests on December 26, 2019, by U.S. mail, and Defendants served their responses and objections on January 28, 2020, thirty-three (33) days later. Bernabe attaches the requests and responses evidencing these dates to his Motion to Compel. *See* Ex. A in Support of Pl.'s Mot. Compel at 1-7 (Plaintiff's Requests); Ex. C in Support of Pl.'s Mot. Compel at 17-57 (Defendants' Responses), ECF No. 57. In response, Defendants contend that because the requests sent by mail, their responses were timely under the mail-box rule. Defs.' Resp. 4-5, ECF No. 58. The Court agrees.

Pursuant to Federal Rule of Civil Procedure 6(d), "When a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)." *See Fujita v. United States*, 416 F. App'x 400, 403 (5th Cir. 2011). Because Bernabe served his discovery requests by mail on December 26, 2019, Defendants had three additional days to respond under Rule 6(d). As such, Defendants' responses and objections dated January 28, 2020, were timely, and Defendants did not waive their objections.

#### 2.       *Documents Bernabe Seeks to Compel*

Bernabe requests Defendants produce: (i) "EMS" and "AMR" reports; (ii) "any and all policies" pertaining to: the "use of a taser"; the "use of deadly force"; "body cam recordings, usage storage, and as evidence [sic]"; "use of force reports"; and "police reports"; (iii) physical evidence, including information on the taser used at the scene including the voltage used; the name of the

manufacturer of the taser and contact address; training needed to use the taser; information on how to use the taser and where to aim; and any and all information related to the taser usage and what to do right after it is used. Pl.'s Mot. Compel 1, ECF No. 54; Pl.'s Br. Supp. Mot. Compel, ECF No. 55.

Defendants object that the information Bernabe seeks has already been produced, is irrelevant to the issue before the Court because the City of Arlington has already been dismissed as a party, and is overly broad and exceeds the scope of permissible discovery related to Defendants' respective assertions of qualified immunity under *Wicks*, *supra*, and *Lion Boulos*, *supra*. Further, Bernabe requests documents not in Defendants' possession, custody, or control. *See generally* Defs.' Resp., ECF No. 58.

### a. EMS and AMR Reports

Bernabe seeks the production of reports from third-party paramedics regarding medical care that was provided to him. Defendants informed Bernabe in response to his discovery requests that they did not have possession of such records and, after making inquiry with the City, that the City did not have possession, custody or control of such records. *See* Ex. C in Support of Pl.'s Mot. Compel at 17-57 (Defendants' Responses), ECF No. 57. The documents are in the possession of AMR, a private EMS company, who was the first responder to the scene or the hospital where Bernabe's discovery requests state that he was treated. On this record, the Court concludes that these documents are not in the custody of control of Defendants. Bernabe has been on notice since Defendants' response on January 28, 2020, that he would need to seek these records and related reports directly from AMR.

In any event, with respect to Bernabe's request for further medical records (in addition to those already provided during discovery), the factual question raised by Defendants' respective

motions for summary judgment is not whether Bernabe was injured; rather, the factual question raised is whether the use of force was justified by Bernabe's actions or whether it was excessive under the circumstances presented to the officers. There is no dispute that Bernabe suffered some injuries as a result of the force used to effectuate his arrest and was transported to the hospital following the use of force. Accordingly, in addition to these requested documents being in the custody or control of a non-party, these documents are not relevant to the Court's assessment of whether Defendants are entitled to summary judgment based on qualified immunity.

<i>b.     City Policies and Taser Literature</i>

As previously stated, the Court dismissed Bernabe's section 1983 claims against the City of Arlington relating to its policies and training. The City of Arlington is no longer a party to this action and its policies, practices, and training materials are, therefore, not discoverable. The sole remaining claim is against Defendants for the alleged use of excessive force.

As a starting point, the Court notes that Defendants have already produced the individual officers' Taser reports, their use of force reports which discuss the tasing, the police reports, including narratives, and an internal memo reviewing the incident.

With regard to the City policies and general taser literature Bernabe seeks, the Court concludes this information is irrelevant as the City has already been dismissed from this case and the City's policies and taser literature themselves do not assist the Court in answering the fact question of whether Corporal Rosenbaum or Officer Insixiengmay used excessive force against Bernabe to effectuate his arrest. Instead, the Court, to rule on this claim, must decide whether the force used by Defendants was excessive under applicable law and whether it violated "clearly established statutory or constitutional rights of which a reasonable person would have known," not whether the force violated a specific City of Arlington policy. *See Harlow*, 457 U.S. at 801.

27

Further, with respect to City policies or general taser literature, as Defendants correctly argue, Bernabe has not explained how that information could preclude summary judgment. Inadequate training allegations are matters to be asserted against the municipality in a section 1983 action, not the individual officers. Further, whether an officer violates a departmental regulation is immaterial to whether a constitutional violation occurred. *See Rakestrau v. Neustrom*, No. 11-cv-1762, 2013 WL 1452030, at *10 (W.D. La. Apr. 8, 2013) (it is not the City's taser policy or use of force policy that governs the question, but rather the governing law of this Circuit); *Fraire v. City of Arlington*, 957 F.2d 1268, 1275 (5th Cir. 1992) (departure from departmental policies or procedures is essentially a negligence claim and does not amount to a constitutional violation).

Bernabe also moves to compel the City's policies pertaining to deadly force because it "will help clarify the question if shooting a suspect in the head with a taser is considered deadly force and if allowed in the circumstances." Pl.'s Br. Supp. Mot. Compel 5, ECF No. 11. In addition to being irrelevant to the limited issue before the Court of whether Defendants are entitled to qualified immunity, tasers are not considered comparable to a firearm of deadly force in the Fifth Circuit. *See Batiste v. Theriot*, 458 F. App'x 351, 354 (5th Cir. 2012); *Rakestrau*, 2013 WL 1452030, at *10.

Finally, Bernabe requests the body camera video policy because "if the video would have been provided all the facts in dispute could have been clarified and show that Plaintiff's claims are the truth." Pl.'s Br. Supp. Mot. Compel 5-6, ECF No. 11. In response to Bernabe's discovery requests, and in connection with their respective motions for summary judgment, Corporal Rosenbaum and Officer Insixiengmay informed Bernabe they were not wearing body cameras in August of 2016 because they had not been issued body cameras. As such, the City's body camera policies are not relevant.

### c.      Specific Taser Information

Plaintiff seeks "information on the taser used at the scene including the voltage used." Pl.'s Mot. Compel 1, ECF No. 54. Defendants produced a taser report for each Defendant, identifying the taser device, serial and model number, and a description of the taser's use as it pertained to the incident in question. Those reports were produced to Bernabe on February 7, 2020, and subsequently provided to the Court. *See* Defs.' Joint App. 15-20 and Exs. thereto, ECF No. 46. Defendants have also identified the source of the tasers as Axon Enterprises, Inc. *Id.* Defendants assert they are unaware, however, of any document which would indicate the "voltage" administered by the tasers. It is undisputed, however, that Bernabe was tased from a distance of approximately five to ten feet and that, subsequent to being tased, he fell to the ground immobilized. The Court has reviewed cases dealing with the use of tasers in effectuating arrests. The cases do not turn on the make or model of the taser. Further, here, it is undisputed that each officer deployed his taser once in probe mode for approximately five seconds and the voltage was sufficient to cause Bernabe to fall to the ground immobilized. No further information concerning the tasers is required for the Court to determine whether Defendants are entitled to qualified immunity.

Bernabe also contends he needs the taser training materials to see if the "Defendants were actually trained properly to handle such weapons." Pl.'s Br. Supp. Mot. Compel 7, ECF No. 55.

As previously stated, this material may have had relevance to a failure to train claim against the City of Arlington, but the City has been dismissed. Whether Defendants were properly trained, therefore, has no bearing on whether their conduct was objectively unreasonable based upon the clearly established law at the moment Bernabe was tased.

Bernabe also seeks the same training material to see whether the material directs an officer where to aim. *Id.* It is undisputed that one of the prongs hit Bernabe in the head. The question for the Court is whether Defendants' conduct, viewed in the light most favorable to Bernabe, is nevertheless objectively reasonable pursuant to the clearly established law. The City's policies have no bearing on this question.

Bernabe seeks, "[a]ny and all information pertaining to the taser usage and what to do right after it's used." Pl.'s Mot. Compel 1, ECF No. 54. The Court agrees with Defendants that "[t]his request fails to identify the documents sought with the requisite specificity [and] is not narrowly tailored to seek discovery necessary to resolve the qualified immunity issue." Defs.' Resp. 11, ECF No. 58. Additionally, the Court agrees with Defendants that requiring them "to sort through, and produce all relevant City policies is precisely the burden that Defendants are protected from until such time as the Court has ruled on their immunity defense." *See id.* at 9, ECF No. 58.

In sum, the parties have conducted substantial discovery in the qualified immunity issue in this case, and there are no outstanding discovery issues that preclude the Court's disposition of the motions for summary judgment. Bernabe's "attempt to obtain any evidence that may support a version of the facts that may defeat summary judgment on qualified immunity does not fit within the limited scope of a discovery request 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'" *Hutcheson v. Dallas Cnty.* , No. 3:17-cv-2021-BN, 2019 WL 1957997, at *3 (N.D. Tex. May 2, 2019) (quoting *Backe*, 691 F.3d at 648; *Lion Boulos*, 834 F.2d at 507-08). The Court will, therefore, deny Bernabe's Motion to Compel Discovery. For these same reasons, the Court also denies Bernabe's request for "reasonable expenses" in the amount of $27,475.32.[6]

---

[6] Federal Rule of Civil Procedure 37(a)(5)(A)(ii) provides that a Court should not order the payment of expenses, even if the motion to compel has been granted, if the opposing party's objections were

## V.      CONCLUSION

Based on the foregoing, the Court finds that Bernabe has failed to raise a genuine dispute of material fact to support his section 1983 claims against either Corporal Rosenbaum or Officer Insixiengmay for use of excessive force in violation of the Fourth Amendment. Accordingly, the Court concludes Corporal Rosenbaum and Officer Insixiengamy are entitled to summary judgment based on qualified immunity; **GRANTS** Defendant Corporal D. Rosenbaum's Motion for Summary Judgment (ECF Nos. 42); and **GRANTS** Defendant Insixiengmay's Motion for Summary Judgment (ECF Nos. 44). Bernabe's section 1983 claims against Corporal Rosenbaum and Officer Insixiengamy for violating his constitutionally protected right to be free from excessive force under the Fourth Amendment are hereby **DISMISSED with prejudice**.

Further, as Bernabe has failed to demonstrate how any discovery he seeks is germane to the Court's inquiry, and Defendants have provided the Court with evidence that they have already provided Bernabe all the discovery he has sought that is relevant to the issues presented and in their possession, the Court **DENIES** Plaintiff's Motion for an Order Compelling Discovery (ECF No. 54).

---

substantially justified. Here, for the reasons set forth by the Court in denying Bernabe's Motion to Compel Discovery, the Court concludes Defendants' objections are substantially justified. Defendants asserting their entitlement to qualified immunity should be free from the burdens of discovery unless such discovery is narrowly tailored and necessary to resolve the issue of qualified immunity. *Backe*, 691 F.3d at 648; *Lion Boulos*, 834 F.2d at 507-08. The record shows that Defendants have produced relevant and responsive qualified immunity discovery. There is nothing before the Court to support Bernabe's contention that Defendants somehow blocked his efforts to obtain discoverable material. Bernabe's request for numerous policies and taser literature are not narrowly tailored to the issue of qualified immunity, and he does not adequately demonstrate why any particular document he seeks would be necessary in order to respond to the Defendants' motions for summary judgment or for the Court to rule on the pending motion. Finally, the only expense Bernabe cites is postage he incurred. The Court declines to award Bernabe expenses.

Pursuant to Federal Rule of Civil Procedure 58(a), the Court will issue a final judgment separately.

**SO ORDERED** on this **18th day** of **March, 2021**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**